On behalf of the people, as that belongs, Mr. Gregory L. Slovacek. On behalf of the EEOA, Mr. Gregory Matias. Good morning, counsel. Mr. Nagle, would you be kind enough to close the door, please? Yes. Thanks. Please record. Mr. Slovacek, on behalf of the state of Illinois. Counsel, I'm going to ask you to keep your voice up as loud as you can, please. I certainly will, Your Honor. Thank you. Is this a little bit closer? Better. There you go. Much better. Okay. Is this a... Perfect. Okay. Thank you, Your Honor. This matter comes, Your Honor, in regard to interpretation of the case previously cited by this court in People v. Matias, and then construing it in conjunction with this court's decision in People v. Oliver. The people respectfully submit that what has occurred is what I think Justice Bromier feared, and then stated in his concurring opinion that this court's previous decision in the heart was implicitly overruled in Oliver, but that, in fact, we still have the standard in regard to dismissal of indictment, which courts that have considered this problem being the most drastic of all measures, particularly where it's a dismissal with prejudice, there had to be really some type of intention or showing on the part of the defense, and, in fact, the state put forward perjured testimony and acted in a way that materially misled the grand jury. What occurred here, however, when you look at the underlying facts here, and you contrast them to Oliver, this case is very innocuous. In fact, as we've urged in our brief, we believe that this case, when you look at the evidentiary hearing that was taken in regard to the evidence that Sergeant Chastain of the North Chicago Police presented, then, in practical effect, that this was even more innocuous than what occurred in Mattis. Basically, the complaints that the defense raised, for example, was that they did not bring forward at the grand jury that the confidential source, in fact, had a criminal record, and, in fact, they vouched for him. In fact, they said he was trustworthy and reliable, but just as Sergeant Chastain explained at the evidentiary hearing that was held on the defendant's dismissal motion, that he was not, in effect, saying that this gentleman was stellar character, but that as far as it was concerned using him in drug operations, that he was, in effect, reliable in that sense. Well, counsel, that qualification wasn't explained to the grand jury, however, was it? And so the grand jury really was misled as far as that's concerned. Well, you're correct, Your Honor, that this, again, gets to the nature of what's involved. This, the people respectfully submit that, again, we have the two functions. We have the accusatory function in regard to the grand jury, and then we have the adjudicatory function of the petted jury. The type of complaints that have been raised and were the basis of the dismissal here more appropriately are what comes up in the trial of the defendant, and, in effect, what cases have held, that it is the purpose of the petted jury, in effect, that it will correct any problems that may have come up in regard to the indictment or the charging of the defendant in regard to the case. This, again, is the type of thing that will come up at trial. These were the type of complaints that will be subject to cross-examination and, properly brought forth, might prevent the defendant from being convicted of the offenses charged. But, again, the purpose of the grand jury is, in effect, at this point, is accusatory. It is basically saying, is there enough here, is there a probable cause here, enough here that we should render charges? Again, the nature of the complaints the defendant based his motion on really transcended and blurred the distinction between the grand jury, between the function of the grand jury and getting water to the petted jury. You know, again, defense relies very heavily on Oliver, but, again, if you take a look at Oliver, here we have, in that case, you have very distinct statements by the officer that were materially untrue. It goes back to Hunter, where, again, you have a situation that you have something that the officer affirmatively stated was untrue, that there had been no, that the defendant had made no statement about the rope slipping from the couch that came loose and struck the victim, causing injuries that ultimately resulted in the victim's death in the Hunter case. But, here again, the nature of the testimony that was brought forward to the grand jury was not of that quality. This, there was no misleading or intentioned misleading of the grand jury here. It was a situation that we have the Sergeant Chastain, in effect, provide a sufficient basis to show that there was probable cause and, therefore, the charges should be rendered by the grand jury. A true bill should result. Again, this was not the situation in Oliver and was not the situation in Hunter. And, again, if we take a look at the other complaints that the defense made, they really went more toward the grounds of impeachment, that this is the type of thing that, in effect, we need to, in effect, almost provide exculpatory type evidence in regard to that. Again, this is not the function of the accusatory body, but in regard to the adjudicated body. And, therefore, again, we have the situation that because this distinction now becomes more, that the concerns Justice Romita had in Oliver are going to come forward. And the State is concerned that should this become the case, that, in effect, we have to start reaching, in effect, holding a mini-trial. Am I correct in assuming that you believe that Hart says that intentional deceit on the part of the State is a sine qua non, and without it, there cannot be a due process violation? No. I know that you have to show, it either has to be, you know, intent or it has to be of such a quality that is virtually intent. I'm not saying that, in effect, that it always would have to be intentional per se, but it does have to be of a very, I guess you'd almost say reckless disregard would be perhaps a, would be something similar. But, virtually, I would say that, again, you have to show that it is, you know, almost, almost intentional, if not intentional per se, that you can say that the State intentionally did it as opposed to the State so recklessly presented its case that it would almost be tantamount to intention. Are you aware of this? What's our standard of review? I'm sorry? What's the standard of review? Okay. The standard of review, Your Honor, there are two standards that can apply here. In this case, we're urging that the de novo standard of review would apply because, in fact, we have no factual, and we really, in this case, have no factual disputes. As this Court said in Mattis, the de novo standard of review would apply. However, if there is, you know, some factual dispute or question, or you find that there is a, you know, the prejudice established, then it can be an abuse of discretion standard of review may be applied. In this case, as we have urged in our briefs, again, we have no essential factual questions, and basically, therefore, the de novo standard of review should apply where this Court can, in effect, go to the second step and basically say, was the trial judge's determination here dismissing this case? And I have to stress, with prejudice, was that, in effect, error. And, again, here, under these circumstances, we respectfully submit that the de novo standard of review should be applied and that this Court can, in effect, look at the resolution of the ultimate issue afresh. Counsel, a little earlier in your argument, I think you mentioned that these alleged violations occurred. You, I believe, sought to minimize them because they occurred at the accusatory stage in a criminal proceeding where evidence was presented to the grand jury. But it is the prosecution that solely makes the presentation to the grand jury. And there's a significance, I think, or the implications for a defendant are certainly significant if a true bill is returned. Isn't that correct? I mean, this isn't an unimportant stage of criminal proceedings, is it? And, therefore, there should be a lower standard applied with regard to whether or not there have been any due process violations? Your Honor, in regard to, again, if I understand the Court's question. Well, I was trying to understand the distinction that you made earlier about this being just the accusatory stage. Okay. Because, again, Your Honor, I'm primarily going to, again, the nature of the complaints, the nature of what was used to dismiss this indictment with prejudice. These are the type of things that one would use and see at trial in regard to getting into the confidential sources background, getting into whether he had convictions, things of this nature. This goes in regard to his reliability as a witness. So you're saying the State only has to present what type of evidence to the grand jury, then? It has to present, Your Honor, evidence that is sufficient to show that there was probable cause. The fact, going to the nature of the confidential form, I would respectfully submit, does not go toward the issue of probable cause, per se. We're going to, in effect, the reliability of the person as a witness. Basically, the officer, Sergeant Chastain, testified that, again, this person, at least as far as being a confidential source, was reliable. But the type of questions, when I was reviewing the evidence you're hearing, we were getting into more of the type of questions that, again, one would see at a trial. In effect, what a defendant has tried to do is turn the grand jury proceeding into a mini-trial, which has been criticized and said that is not the function of the grand jury. The grand jury is, okay, is there enough question here that there's enough cause here that we should bring charges, we should issue a true bill. If you may, I interrupt and ask, did you write the appellate brief on behalf of the state in Hart? I don't believe I did, Your Honor. Are you aware that there was a special concurrence file in the case? Yes, Your Honor. Who wrote that? You did. And do you remember what I said about the case? I said that the majority raised an issue that the parties hadn't and decided an issue that the parties hadn't argued and came away with a pronouncement that seemed to fly in the face of prior case law. And I said that I thought it was unnecessary to get to the issue. I also disagreed with the idea that a violation of due process had to be established based upon an act of intent, i.e., it doesn't make any difference what the state does as long as the state is innocent. All the witnesses can lie through their teeth and it's not a violation according to the majority in Hart. Isn't that correct? Isn't that what Hart says? If the state isn't privy to the violations that look like a lynch mob or a kangaroo court, there is no violation. Now, am I misquoting them, so to speak, or misrepresenting what they said? No, Your Honor. Okay, thank you. Thank you. And Mr. Nikitos. Thank you. May it please the Court and counsel. Justices, this, despite the concerns voiced initially by the state. You have to keep your voice up, please. There's a fan on the ceiling and so we all have to be able to hear, please. Let me know if that's better. It's better. Okay. The concern I think the state has here is that if you allow this to occur, this is going to happen and it's going to be rampant and it's going to be an endemic problem. This is not a situation that comes up very often, as you know, despite the concerns voiced in 2006 with Oliver. This is a situation where the focus should be, I think correctly as Justice McClaren has noted, on the effect to the defendant. It is less of a concern regarding the intent of the prosecution. Intentional, unintentional. It's interesting. It matters. It's important. But the vital inquiry is what is the effect, the due process implication to a defendant in this particular situation? Because it is a grand jury proceeding. There are very few protections according to any defendant during the grand jury proceeding. It's ex parte. That's the way we've set this up. But if you allow testimony, and we know from this case because there was very limited areas of testimony, these are allegations regarding hand-to-hand transactions, that every piece, every answer, if you will, provided by Sergeant Chastain is vital to the determination of the grand jury as to whether there's probable cause. So they relied on everything he said. And it was the State that decided to ask the question, is the confidential informant trustworthy and reliable? Well, isn't that a question of opinion? I think... Your state ability isn't? If you ask me, am I reliable, aren't I giving you an opinion as opposed to a statement of fact? Absolutely. But I think what's interesting is the State decided to ask that question. I mean, you can get an indictment without asking that question. They chose to ask, and you're absolutely right, it is wide open. But what's interesting here is we've got an officer testifying in a hearsay capacity. Now, in a way, that sort of carves out a separate area from what is normally presented at a grand jury. And there are safeguards in place to ensure that when you have that situation of an officer testifying in a hearsay capacity, that they do so in a way that they bring that out, that they say, I didn't observe this. I don't know that they could bring it out so much as they have to not assert that they were present. Agreed. Agreed. You're correct. Isn't there plenty of case law that says hearsay is admissible in a grand jury hearing? Absolutely. And isn't it also true that under your theory, almost every case could be attacked, any indictment could be attacked, the way you're approaching it? I don't mean, and I probably overstated it, I don't mean to suggest that hearsay is not allowed. I mean, I was a prosecutor, too. The system relies on that to occur. But what I'm suggesting is when it does occur, we have to be careful. And in this situation, there is testimony that this officer observed something that he didn't. So the cases that this court has heard, Hunter, Mattis, Oliver, I think when there's hearsay, there have to be very careful phrasing, very careful decisions. As Justice McLaren noted, you can't put yourself in and say that you observed something when you didn't. But what we have here is Sergeant Chastain being asked the question, is this witness, C.I., trustworthy and reliable? The state chose to ask that question, and absolutely, it's subject to interpretation and opinion. However, Sergeant Chastain was not the case officer on the case. He was not the officer who monitored the C.I. In fact, he had no, almost no interaction with the C.I. So we've almost got a situation where it's almost like an ostrich putting its head in the sand. The state selected that witness to come before the grand jury to obtain these indictments. Was it Navarro who decided that this particular informant resulted in 37 arrests and 20 convictions, or did I misread the briefs? No, that's correct. Who said that? Was it Navarro or was it Chastain? It was Sergeant Navarro. So, and there's some explanation as to why Navarro wasn't present. But again, the state has control over the time and place of the indictment and who they call as the witness. And they made these decisions. They're the ones that asked the questions. And while it is subject to interpretation, they put a witness on the stand under oath before the grand jury who did not have knowledge of the prior criminal background of this defendant or the fact that he was paid almost $4,000 to do this or the fact that we ultimately learned that he was retaining drugs every time he was involved in a transaction. He retained drugs for himself. So this became a situation that was very beneficial to the CI and affected his credibility. And while certain elements of that are for the jury, the state brought all of this out by asking the question in the grand jury about trustworthiness and reliability. And by having Sergeant Chastain there, the answer that he gave was without qualification. Is he trustworthy and reliable? Yes. Now, Sergeant Navarro knows a little better than I do. I didn't really have any contact with him. I didn't really set up any of the deals. I never checked him to see if he was retaining drugs. I don't know if he has a heroin addiction while this investigation is going on. That's why I think it's critical that there be some safeguards set up for defendants in this situation. And that's why I think the trial court correctly ruled that there were prejudicial due process violations. So when we talk about what standard of review, I think the abuse of discretion standard should be applied here. What about dismissal without prejudice? Why dismissal with prejudice, which, as appellate counsel said, is a much more onerous burden on the state? Justice McClernand, I think it's because the grand jurors relied on these inaccurate, untruthful statements to come to the decision that there was a true bill. So that's why without prejudice I think it applies. Because these are significant violations that were solely relied on by the grand jurors to reach their decision. This isn't a situation where these are peripheral matters or there's still enough testimony to bring an indictment. The critical aspects of the case, we found that Sgt. Chastain's testimony was not accurate. And that's why I think that extreme remedy is appropriate. What would Navarro have testified to regarding honesty and reliability if he were the one? Justice, you ask a great question. I had the benefit in a separate trial of cross-examining Sgt. Navarro about this confidential informant. It was a murder case. It was unrelated to this investigation. So I'm not guessing about what Sgt. Navarro said or would say. I sort of have the benefit of having gone through that. And what he said was, I suspected that this individual had a heroin addiction during the time he used him as a C.I. Just regarding honesty and integrity, reliability. Let me put it this way. If Navarro testified that, in my experience, the informant has been honest and reliable. And I think he did testify to that with respect to working with the informant. And if he had just said, I believe he's honest and reliable, what would have happened then? With respect to, would he have to then go on and say, but he has a prior criminal record, a very long prior criminal record. But he has an existing case pending against him. But he's paid. Do you have your position that as soon as you get into the character of the informant, you have to bring out all the facts relative to your opinion? I don't mean to suggest that. I think that would be an onerous burden everywhere for prosecutors. Because the criminal justice system, at least the prosecution aspect, relies on witnesses like this. And it would be onerous to the State to have to go through that every time. But in this particular case, and I think the trial court sort of correctly took away from the answer, that it was vouching for the C.I. The question wasn't answered in such a way as Sergeant Navarro subsequently did. Well, he's reliable because he shows up on time, and we've never had a problem with him, and he answers his phone, and he meets us when we need him. So, as Justice McClernand was saying, it is so subjective. But there was no qualification offered. And I think the trial court correctly interpreted the answer. Is he trustworthy and reliable to give this C.I. additional credibility that he would otherwise never have based on the answer that Sergeant Chastain gave? You're saying, essentially, that the Assistant State's Attorney opened a can of worms? You know, Justice, as I said, they pick who they want to call, and they pick the question. They're the ones that ask that question. I mean, you can obtain an indictment without ever asking that question, I believe. But they chose to ask that question for whatever reasons they had at the time. And the effect was that it added – you have Sergeant Chastain there, who is a commanding presence, and that gave additional credibility to what he had to say to suggest that this individual that they were working with was trustworthy and reliable. The reality is, he's just a C.I., just like most C.I.s. As far as the prosecution and whether it was intentional or unintentional, the trial court held that it was not intentional. But the effect on the defendant is really the key inquiry. I think, as the cases, federal and your own, suggest, the focus should be on what is the effect of the defendant. And in this case, the effect of the defendant was that he was substantially prejudiced. And, Your Honors, that is why we believe that the trial court opinion or ruling should be upheld, and you should deny the request to overturn that. Any other questions? By the trial court making a finding that the statements of the policemen were not intentional, isn't that inconsistent with dismissal of prejudice? You know, it's interesting because, again, the State is making decisions here. They didn't ask for any – they didn't file a motion to reconsider in the case, which I think is significant. They have the right to do that, but they chose, rather than have the trial court further explain so that we have a little more to rely on, what their ruling was, they chose to go ahead and file directly to you, and they did. So I don't know, because I wasn't there, if she was saying that because the officers were present and she was trying to be polite, but we were deprived – I'm sorry? The trial court made a very expansive statement on why she found the way she did. That's true. And we're forced to rely very heavily on every word that was used because we don't have a motion to reconsider her ruling on that. So when she says that it may have been unintentional, I think, again, this feeds back into what our position is, that by selecting an officer, as the State did, who does not have knowledge of these things at all, they gain a benefit that they would not otherwise have, and the result is the prejudice to the defendant. So that's why I think we have to be careful when we hear state situations, as we are here, and we have to be careful when people who don't know are vouching for things that they have no knowledge of. Is she using this case as an example to force the State, in future cases of presentation before the grand jury, to use actual witnesses and not somebody that's totally providing hearsay? I don't know that she's going that far, and I want to be careful about what I'm arguing to you. I don't mean to suggest that that's what needs to happen. But this officer testified later that he had reviewed all of the reports in the case in an attempt to explain that he was qualified to testify before the grand jury. If he had done that, he would have learned these things that came out, that this person was paid, that there was a concern that they were using heroin, all of those things. And so by the selection of that witness and his lack of knowledge, the State benefited, I think, inappropriately. Thank you, counsel. Mr. Sloboda? Thank you, Your Honor. Again, my colleague's presentation, I think, just again reinforces the nature of the type of complaints. And again, these are the type of complaints that are more appropriately raised at the trial level as opposed to before the grand jury. Again, looking back at Oliver, here you have the situation in Oliver that there were direct affirmative statements that were made, and this is why the Oliver court decided that it found that it was prejudicial, that prejudice attached to the defendant and basically allowed the dismissal with prejudice. But also, however, the majority in Oliver also added, in effect, a postscript at the conclusion that, in effect, it was not dealing with the quality or assessing the quality of the evidence in terms of the quality of evidence brought before the grand jury, but rather, in effect, whether or not determining whether there was indeed prejudice. Here, again, taking the thing as a whole, taking the testimony that was brought forth at the evidentiary hearing concerning the defendant's motion, this again shows that this was not the type of misleading evidence that, in effect, would have meant the grand jury could, in effect, could not indict, because I think the court very correctly asked the question in regard to, well, here we're dealing with, in effect, a brief opinion in regard to the confidential informant, but that opinion does not take away from the fact that enough was brought forward that there was indeed probable cause to allow an indictment to issue here. I have one housekeeping matter, if I may. I don't know whether this has been handed to the court. We did have a situation right when I was preparing for oral argument in this case, and I discovered late Friday afternoon that I had a call for my reply brief and the defendant's appellee's brief, and our office didn't have either. What occurred very basically is that the defendant did file his appellee's brief and did attempt to serve it on us, but due to a typographical error, instead of 2032 Larkin Avenue, it was sent to 2023 Larkin Avenue. For some reason, that never got picked up, and the first I was aware that appellee indeed had responded to my original brief was about 4 o'clock Friday afternoon. I want to thank Mr. Mangan for this and his staff for their courtesy in providing me a copy of appellee's brief, which I had the opportunity to review over the Martin Luther King Day weekend. I have taken the unusual step of, and I have provided copies to counsel, of having drafted a reply brief. I am seeking leave of this court to file the reply brief in standard. It is not raising any new cases, but merely again making a responsive argument to the cases cited by a defendant. I would seek leave of the court to file that reply brief in standard for the court's consideration. Most of the motion and the order have been submitted with the reply briefs to the court. At this time, counsel, the court will take your motion under advisement. Thank you, Your Honor. Thank you very much, counsel. The court will take the case under advisement and render a decision.